FILED
JAN 1 3 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TROY A. THOMPSON
2110 Trafalgar Drive
Fort Washington, Maryland 20744

      Plaintiff,

v.

DISTRICT OF COLUMBIA

     SERVE ON
ROBERT SPAGNOLETTI
Office of the Attorney General
441 Fourth Street, N.W.
Washington, D.C. 20001

      Defendant.

CASE NUMBER 1:06CV00063

JUDGE: Emmet G. Sullivan

DECK TYPE: Employment Discrimination

DATE STAMP: 01/13/2006

**JURY ACTION**

### PLAINTIFF'S COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

COMES NOW Plaintiff, Troy A. Thompson, by and through undersigned counsel, and files this complaint for damages against Defendant District of Columbia for alleged violations of Title VII of the Civil Rights Act of 1964 and the D.C. Human Rights Act.

### JURISDICTION AND VENUE

1. Jurisdiction of the Court is invoked pursuant to 42 U.S.C. §§ 1981 and 2000(e) 2(a), Title VII of the Civil Rights Act of 1964, as amended, 28 U.S.C. §§1331, 1337, and 1343, and D.C. Code §2-1401, D.C. Human Rights Act of 1977, as amended. Venue is proper as the employment practices were committed within the jurisdiction of the District of Columbia.

2. Plaintiff, Troy A. Thompson, brings this action for discrimination: to wit;



discrimination based on gender and race, as it relates to the employment practices of the Defendants and their agents.

## PARTIES

3.  At all relevant times to this action, Plaintiff was employed by the Metropolitan Police Department. Plaintiff timely filed a complaint with the Office of Human Rights alleging discrimination based on gender and race. The United States Equal Employment Opportunity Commission ("EEOC") has received a right to sue letter from the EEOC.

4.  Defendant, Metropolitan Police Department ("MPD"), an agency of the District of Columbia, is a defendant in this action because it was in control and operated as the employer of the Plaintiff at all relevant times associated with this action.

## FACTS COMMON TO ALL COUNTS

5..  Plaintiff began his employment as a Recruit Police Officer with the Metropolitan Police Department August 25, 2003 with a salary of approximately $39,500.00.

6.  Plaintiff was admitted into the Metropolitan Police Academy class scheduled to graduate in April of 2004. On August 23, 2003, the 2003-2004 graduating class was introduced to class Sergeant Taylor and class Officer Hazelton.

7.  In September of 2003, Plaintiff witnessed and overheard Sgt. Taylor making an offensive and inappropriate remark to a female recruit. When Plaintiff defended the female recruit, Sgt. Taylor reprimanded Plaintiff.

8.  In or about September of 2003, Plaintiff learned that two female recruits from his class broke into the residential building after hours to steal a flag. They were caught and brought before Sgt. Taylor but no investigation was conducted and no disciplinary action was taken, even

2

though this violation warranted immediate dismissal in accordance with the Recruit Officer's Handbook. Both female recruits graduated from the academy as scheduled.

9. In or about January of 2004, Plaintiff learned that two Caucasian male recruits from his class came to work smelling of alcohol. The recruits confessed to Sgt. Taylor that he had been drinking alcohol the previous evening. No investigation was conducted and no disciplinary action was taken, even though this conduct violated the Recruit Officer's Handbook.

10. When Plaintiff asked Sgt. Taylor how to best handle a situation involving an intoxicated fellow officer once he graduated from the academy, Sgt. Taylor replied to Plaintiff, "Recruit Officer Thompson, don't make yourself a victim in this Department."

11. Plaintiff was arrested on February 26, 2004 for alleged charges of telephone misuse and another individual petitioned for a Peace Order.

12. During the hearing on the Petition for Peace Order, an official from the MPD Internal Affairs was present in the courtroom taking notes.

13. The petition was found by the Court to be unsubstantiated and was denied and dismissed.

14. On March 16, 2004, Plaintiff was exonerated when the telephone misuse charges were dismissed.

15. Plaintiff immediately provided Sgt. Taylor with a copy of the dismissal.

16. On March 18, 2004, Sgt. Taylor singled Plaintiff out during a recitation exercise of the Code of Ethics. He pulled Plaintiff into the hallway outside of the classroom and began to scream at the top of his lungs at Plaintiff, spitting in his face as he did so, "You are a recruit and can be terminated for anything".

17.  Sgt. Taylor told Plaintiff to take off "his" uniform and meet him in the cafeteria. Plaintiff went to his locker, changed clothes, and went to the cafeteria to await further instructions.

18.  On March 21, 2004, Sgt. Taylor asked Plaintiff to write an "essay" about the circumstances of the previously highlighted incidents.

19.  Plaintiff completed the "essay" and on March 22, 2004, Sgt. Taylor told Plaintiff to go to Lt. Hayes office. Plaintiff did so, and Sgt. Taylor then arrived and closed the door. Lt. Hayes yelled at Plaintiff, reminding him that Plaintiff was just a recruit and that Plaintiff should do anything and everything he was told, right or wrong, and that Plaintiff should even stand there and let Sgt. Taylor spit in his face if need be. Lt. Hayes threatened then that they were going to send Plaintiff to the Police and Fire Clinic to be reevaluated for suitability by a psychiatrist.

20.  Plaintiff was sent to the library to await further instructions and was subsequently sent to Sgt. Taylor's office 40 minutes later. When Plaintiff arrived, Sgt. Powell was present. Sgt. Powell stated that he'd read Plaintiff's essay and that it made Plaintiff sound like a "girl", and that if he was a suspect he would "fuck [plaintiff] up.

21.  Plaintiff was confused by the confrontation because he couldn't understand that essay was supposed to be an academic exercise detailing the virtues of leadership and professionalism.

22.  Sgt. Taylor stated that he didn't want Plaintiff in his class but that "I don't have a choice". Sgt. Taylor told Plaintiff that he really didn't have any union rights. Sgt. Taylor also stated that the FOP couldn't help him because Plaintiff was a probationary officer and that Plaintiff "[could] be terminated at will".

4

23. On April 5, 2004, Sgt. Taylor gave Plaintiff a letter stating that his probationary period was being extended as a result of the February charges and that he would not be graduating with his class on April 30, 2004. Sgt. Taylor reminded Plaintiff that internal affairs investigates all criminal charges. Plaintiff reminded Sgt. Taylor that internal affairs had never contacted Plaintiff about it and asked again if he could talk to them. Sgt. Taylor replied "No".

24. On April 15, 2004, Agent Moore of Internal Affairs began to harass Plaintiff's friend, repeatedly asking her to come in and give them a statement. This harassment continued until well into May.

25. On April 6, 2004, Officer Hazelton came into Plaintiff's class during academic time and announced to the class that the Plaintiff had been charged with phone harassment, breaching her officers' Code of Ethics and Plaintiff's personal confidentiality. She did not add that these charges were unfounded and in fact were summarily dismissed.

26. On April 20, 2004, ten days before Plaintiff's class was scheduled to graduate, Plaintiff again reminded Sgt. Taylor that he had not been contacted by internal affairs regarding their investigation.

27. Plaintiff's class graduated on April 30, 2004 without him. On May 3, 2004, the Monday after Plaintiff's class graduated, Lt. Hayes asked Plaintiff to take a folder down to the Police and Fire Clinic. Plaintiff realized that his case file had just been forwarded for consideration.

28. On May 4, 2004, Plaintiff was first contacted by Agent Moore. Plaintiff went to her office to give a statement regarding the February charge.

29. Approximately two weeks later, Agent Moore called Plaintiff back into her office and accused Plaintiff of lying on the MPD Blue Booklet he completed in January 2003. She

5

alleged that during the application process, Plaintiff told Prince George's County Police ("PGCP") that Plaintiff had smoked marijuana and sold drugs in the past, but failed to state this on the MPD's Blue Booklet.

30. Plaintiff denied the allegation and related to her how the questions asked by PGCP were not phrased the same as MPD and that he answered the questions as presented. Plaintiff also explained that the PGCP recruiter had misguided him in his interpretation of the questions and that this interpretation was wrong.

31. Following Plaintiff's meeting with Agent Moore, she along with Investigator Robinson, confronted Plaintiff's friend at her place of employment where Agent Moore tried repeatedly to get the young lady to recant her statements made in favor of Plaintiff at the March peace order hearing, and to change all of her prior statements.

32. Agent Moore threatened the young lady by suggesting that she would file false charges against her if she did not comply. The young lady refused to change her statements.

33. On July 6, 2004, Plaintiff received a letter terminating his probationary appointment from the position of police officer, effective July 9, 2004. This letter did not state why Plaintiff was being terminated. Calls to Human Resources and FOP were unsuccessful

34. On July 8, 2004, the Office of Diversity and EEO Compliance informed Plaintiff of its determination that the Metropolitan Police Department acted within its guidelines under the D.C. Human Rights Act.

35. Plaintiff spoke with Jacqueline Johnson, MPD EEO Officer, briefly over the phone and asked her about the cause for his termination.

36. Plaintiff met with Ms. Johnson the same day and received from her a letter stating she had investigated his termination and supported the MPD actions. Neither Ms. Johnson, nor

6

any other officials involved in Plaintiff's termination, ever asked Plaintiff for his account of the basis used to justify his termination.

37. Plaintiff asked Ms. Johnson the reasons given for his termination and she stated that internal affairs cited: (1) phone harassment; (2) threats with a gun; and (3) falsification of his employment application.

38. Upon Plaintiff's attempts to explain his position Ms. Johnson suggested Plaintiff wait to give his responses to OHR.

## COUNT I
## DISCRIMINATION BASED ON GENDER
## 42 U.S.C. §2000(e) 2(a) and (d) and D.C. Code §2-1401.01

39. Plaintiff repeats and realleges the allegations of paragraph 1 through 39, inclusive, and incorporates the same by reference as though set forth fully herein.

40. Defendant District of Columbia engaged in a pattern of unlawful discrimination by terminating Plaintiff on the basis of gender.

41. Defendants engaged in a pattern of unlawful discrimination by limiting and classifying Plaintiff in a way which deprived Plaintiff of employment opportunities and adversely affected his status as an employee with the Metropolitan Police Department, because of Plaintiff's sex.

42. Defendants violated Plaintiff's rights to have an equal opportunity to participate fully in the economic, cultural and intellectual life of the District and to have an equal opportunity to participate in all aspects of life, including, but not limited to, in employment as a police officer.

43. Defendants' actions prevented Plaintiff from achieving his promotion potential as a Police Officer because he was an African American male.

7

## COUNT II
## DISCRIMINATION BASED ON RACE
### 42 U.S.C. §2000(e) 2(a)and (d) and D.C. Code §2-1401.01

44. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 42 as fully set forth herein and further allege:

45. Defendant District of Columbia engaged in a pattern of unlawful discrimination by terminating Plaintiff on the basis of race.

46. Defendants engaged in a pattern of unlawful discrimination by limiting and classifying Plaintiff in a way which deprived Plaintiff of employment opportunities and adversely affected his status as an employee with the Metropolitan Police Department, because of Plaintiff's race.

47. Defendants violated Plaintiffs rights to have an equal opportunity to participate fully in the economic, cultural and intellectual life of the District and to have an equal opportunity to participate in all aspects of life, including, but not limited to, in employment as a police officer.

48. Defendants' actions prevented Plaintiff from achieving his promotion potential as a Police Officer because he is an African American male.

## COUNT III
## RETALIATION
### §§703 and 704 of the Civil Rights Act of 1964

49. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 48 as fully set forth herein and further allege:

50. Defendant imposed unreasonable working conditions on Plaintiff by constantly harassing him throughout his training period and subsequently denied Plaintiff his pursuit of employment as a police officer because of his race and gender.

8

51. Plaintiff was treated disparately because of his race and for having defended a fellow police recruit against the unlawful actions of his superiors.

52. Plaintiff's outspoken nature and his tendency to protect others in need made him a target. Plaintiff's gender and race were determining factors in Defendants' decision to deny him employment as evidenced by the fact that improprieties committed by Caucasian or female officers were overlooked.

53. As a direct and proximate result of Plaintiff's actions, Plaintiff has suffered and will continue to suffer severe mental anguish. He has suffered a loss of earnings nd will continue to lose other employment benefits and job opportunities in his chose profession.

54. Plaintiff believes, and based thereon alleges, that in addition to the practices enumerated above, defendants have engaged in discriminatory practices against Plaintiff which are not yet fully known. At such time as said discriminatory practices become known to him plaintiff will seek leave of court to amend this complaint in that regard.

**WHEREFORE**, Plaintiff respectfully prays this Court:

(a) To award compensatory damages in excess of $250,000.00;

(b) To award punitive damages against Defendant in an amount in excess of One Million Dollars.

(c) To award reasonable attorney's fees and costs of this action; and

(d) To award such other further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial on all issues.

Respectfully submitted,

COLLINS & TALLEY, LLC
Reuben B. Collins, II
Bar Number 14561
P.O. Box 1857
La Plata, Maryland 20656
(301) 934-4366
(301) 934-1668 (facsimile)
**FOR PLAINTIFF**