UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TROY THOMPSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No.: 06cv0063 (EGS) |
| | : | |
| DISTRICT OF COLUMBIA, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

_____

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff Troy Thompson, by and through counsel and pursuant to Fed. R. Civ. P. 56 do hereby requests that this honorable court deny the Defendant's motion for summary judgment on all claims in this matter.  In support of this motion Plaintiff states as follows:

Defendant fails to establish that the Plaintiff's claim lacks material facts as to which there exists no genuine issue in dispute.    Plaintiff's claim satisfies all statutorily required statute of limitations and as such is ripe for trial.   A memorandum of Points and Authorities in support of this motion is attached hereto.  Supporting exhibits and a proposed order are also attached.

Respectfully submitted,


_____/s/_____
THE COLLINS LAW GROUP, LLC
Reuben B. Collins, II (#459751)
P.O. Box 1857
La Plata, Maryland 20646

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TROY THOMPSON | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No.: 06cv0063 (EGS) |
| | : | |
| DISTRICT OF COLUMBIA, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Troy Thompson, by and through counsel and pursuant to Federal Rule of Civil Procedure 56(b) respectfully moves that the Honorable Court deny Defendant's motion for summary judgment.

## STATEMENT OF THE CASE

This is an employment discrimination and retaliation claim arising out of Plaintiff's termination as a recruit officer with the Metropolitan Police Department (MPD). Plaintiff alleges that he was terminated because of his gender (male) and race (African American). Plaintiff's complaint alleges that MPD treated him differently than women and non-African-American recruit officers. Plaintiff also alleged that he was terminated in retaliation for engaging in protected activity when he openly challenged his training official for using inappropriate language towards a female recruit in his class. This action was brought against the District of Columbia pursuant to Title VII, 42 U.S.C. § 2000(e) *et seq.* and the DC Human Rights Act (DCHRA), C.C. Code §2-1401.01 *et seq.*

## STATEMENT OF FACTS

Plaintiff Troy Thompson was employed with the Metropolitan Police Department as a recruit officer during the period August 2003 to July 2004.  (See Exhibit 1, Affidavit of Plaintiff, page 1) In January 2003 Plaintiff was called into the recruiting office of MPD to fill out his Blue Background Booklet.  Inside the booklet an applicant is required to put information such as where you have worked, etc.  The document also asked questions about prior drug usage the applicant may have had.  (Exhibit 7, Thompson depo., page 18-33) Plaintiff raised his hand to ask a question of the recruiter present because he needed a better understanding of the question. Plaintiff told the recruiter that he had applied previously to the Prince George's County, Maryland Police Department and when he filled out the Blue Background Booklet for that department, the same type of drug question arose.  Plaintiff explained to the Prince George's recruiter that he had never smoked, used or sold illegal drugs of any kind, however during high school he had been around others who did so.  The Prince George's official told Plaintiff that this constituted second hand smoking even though he never actually consumed a controlled substance.

Plaintiff was also asked by the MPD recruiter whether he knew of anyone that may have sold illegal drugs.  (Exhibit 7, Depo. of Plaintiff page 18) Plaintiff raised his hand and explained to the same recruiter that during high school he was around individuals who had sold marijuana. The recruiter asked how much he thought the individual had made selling drugs and he replied that through hearsay he was told $12,000 per week.  (Exhibit 7, Depo. of Plaintiff, page 22) When Plaintiff applied to MPD he explained all of this to his recruiters.  The MPD recruiter told Plaintiff that the Prince George's recruiters were wrong because answering in the manner in which that jurisdiction requested would give the impression that he had personally consumed and

sold drugs.  The MPD recruiter told Plaintiff that his experiences were not the same and not the intent of the question(s) as asked in the MPD booklet.  "Experiment" means have you "personally" used drugs.  Plaintiff's answers to MPD were therefore truthfully "no" and his responses in his MPD booklet reflected no to those questions on drug usage.

The MPD recruiter stated that Plaintiff had explained both situations to her and that where the Blue Booklet asks whether Plaintiff applied to any other agency, to respond in the affirmative.  The MPD recruiter told Plaintiff to put in his application, Prince George's County and she would look into his responses.  The MPD investigator checked his background and every other response by the Plaintiff and confirmed that his responses were truthful.

Plaintiff was hired with MPD on August 25, 2003.  (Exhibit 1, Plaintiff's Affidavit page 1) At that point his class was introduced as 2003-4 and his class Sergeant was Damian Taylor. The class recruit Officer was Officer Hazelton.  The first three weeks into the class Sgt. Taylor made a statement saying to one of the female recruits "Do you know who your baby daddy is". (Exhibit 7, Depo. of Plaintiff page 36-38) The offensive comment was clearly inappropriate in that setting and Plaintiff told Sgt. Taylor that he thought that the comment was not appropriate. Taylor's response was "I am an official and you are a recruit so don't forget it".

During the period Plaintiff was in the academy, a white male recruit (Hoetzel) came to class smelling of alcohol.  (See Exhibit 6, Affidavit of Stephen Salisburg) The recruit confessed to Sgt. Taylor that he had been drinking the night before and supposedly it could still be on his breath and wasted on his clothes.  Sgt. Taylor took the recruits word for this, and did not take a police report or pursued any type of disciplinary action against the recruit.  (See Exhibit 7, page 46, Deposition of Damian Taylor) The recruit was simply allowed to miss class and sit in the library that day.  Plaintiff Thompson asked Sgt. Taylor if this had happened while he and the

other recruits were officers what should a fellow officer do, since a drugged or drunk officer cannot be any help to either his partner or to District of Columbia citizens.  Taylor's response was "Recruit Thompson don't make yourself a victim in this department.  (Exhibit 1, Affidavit page 2)

A few days later Plaintiff's physical Training Instructor told Sgt. Petty that Plaintiff's eyes looked dilated.  Plaintiff was then sent to the Police and Fire Clinic. (PFC)  Sgt. Roman gave Plaintiff urinalysis which the Plaintiff passed without incident.

In February 2004, Plaintiff was charged in Prince George's County with phone harassment and at the same time a girl known by the Plaintiff's girlfriend made a Petition for a Peace Order.  The petition was found by the court to be fabricated and without merit and as a result was dismissed.  (See Exhibit 8, Transcript page 72 ) During the hearing for this petition an official from MPD Internal Affairs was present in the courtroom.  Eight days later, (March 16, 2004) the phone harassment charge was also dismissed before it was brought to trial nolle prosequi.  (See Exhibit 10, Nolle statement) Plaintiff immediately brought a copy of the actual dismissal to Sgt. Taylor.  The charges and arrest were later expunged from Plaintiff's record. (Exhibit 11 & 12)

Two days later Sgt. Taylor singled Plaintiff out during a recitation of the Code of Ethics. He pulled Plaintiff into the hallway outside of the classroom and began to scream and inadvertently spit in the Plaintiff's face causing him to retreat and take a step backwards.  He stated "You are a recruit and can be terminated for anything".  Sgt. Taylor then told Plaintiff to take off his uniform and meet him in the cafeteria.  (Exhibit 1, Affidavit page 3)

Officer Hazelton came down to the cafeteria and told Plaintiff to put his uniform back on and wait for Sgt. Taylor.  When Sgt. Taylor came out front, he had a copy of the Recruit

Officer's handbook where he had yellow highlighted certain sections and told Plaintiff to write

an essay about the sections he'd highlighted. Plaintiff was also handed a blank PT-109 Form.

Plaintiff completed the essay and on the following Monday, March 22, 2004 Sgt. Taylor

told Plaintiff to report to Lt. Hayes office. Plaintiff complied and Taylor arrived later and closed

the door. Lt. Hayes began yelling at the Plaintiff and reminded him that he was just a recruit. Lt.

Hayes also threatened to send Plaintiff to "PFC" to be evaluated by a psychiatrist.

On April 5, 2004, Sgt. Taylor gave Plaintiff a letter stating that his probationary period

was being extended as a result of the February charges and that he would not be graduating with

his class. Plaintiff asked why was this the case when the charges had been dismissed almost two

months prior and he had provided documentation to prove that it was a non-issue. Sgt. Taylor

that Internal Affairs was still investigating the matter.

On April 6, 2004 Office Hazelton came into our class and announced that Plaintiff had

been charged with phone harassment. (Exhibit 2, Extension letter) Hazelton never stated that the

charges were dismissed. On April 15, 2004 Agent Moore of Internal Affairs began to harass La

Tanya Torrence by repeatedly asking her to come in and give a statement. On April 20, 2004,

10 days before Plaintiff's class was scheduled to graduate, Plaintiff reminded Sgt. Taylor that he

had not been personally contacted by Internal Affairs and that he should be allowed to graduate

with his class.

Plaintiff's class graduated on April 30, 2004. The Monday after graduation, Lt. Hayes

asked Plaintiff to take his folder down to PFC. It was at this time that Plaintiff was assigned to

the Property Division and away from the Training Academy. Agent Moore finally contacted the

Plaintiff on May 04, 2004. Plaintiff was ordered to give a statement regarding the February

charge. Plaintiff truthfully stated that he did not know the complainant in the phone harassment

matter.  Approximately two weeks later Agent Moore followed up and asked questions about the Blue Booklet and accused Plaintiff of giving false statements in his application.  He explained that he was truthful and that any discrepancy could be attributed to the varying definitions of drug usage between the two agencies (MPD and Prince George's)  Following this meeting Agent Moore and Investigator Robinson (individual present during Prince George's court date) arrived at the employment location of La Tanya Torrence.  (See Exhibit 4, Affidavit of La Tanya Torrence) Agent Moore made efforts to make Ms. Torrance recant her previous statements.  Plaintiff did not hear further information about his employment status until approximately two months later when he received his termination letter dated June 30, 2004.  He did not actually receive the letter until July 06, 2004.  Plaintiff spoke to Jacqueline Johnson the MPD EEO officer on July 08, 2004 about filing an administrative complaint against the agency.  Plaintiff officially filed his written complaint to the DC Office of Human Rights on July 23, 2004. (See Exhibit 3, Human Rights Complaint)  Plaintiff received a right to sue letter dated October 17, 2005. (Exhibit 5) His complaint was filed within the statutorily required 90 days.

## ARGUMENT

**I.     Plaintiff's claims are not barred by the one year statute of limitation.**

Statutory claims are not subject to the one year statue of limitations under the DC Code § 2-1403.16 (a).

D.C. Code 2-1403.16 (a) provides:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction for damages and such other remedies as may be appropriate… A private cause of action pursuant to this chapter shall be filed in a court of competent jurisdiction…The

In an analogous case, the court in *Fowler* concluded that the District of Columbia's "work sharing agreement" relieved the plaintiff of the burden of exhausting his remedies with the stage agency. The Court further noted that "it would be contrary to the policy of cooperation embodied in Title VII…for the courts to accept the defendant's interpretation of the DCHRA as requiring the plaintiff to pursue separate administrative remedies for state and federal discrimination claims. *Fowler v. District of Columbia*, 122 F.Supp.2d 37, 42 (D.D.C. 2000).

In the present case, Plaintiff filed an EEOC complaint which tolled the statute of limitations. Plaintiff was entitled to bring a Title VII action in federal court and was not required to first file his complaint with the District of Columbia agency.  Plaintiff was terminated on June 30, 2004 and filed his complaint with Human Rights Commission on July 23, 2004.  His claim was administratively investigated for a time period that exceeded the generally required 180 days. Plaintiff requested an immediate hearing or in the alternative a right to sue letter on August 10, 2005.  Subsequently, the Plaintiff received his right to sue letter on October 19, 2005.  There did not exist any statutory barrier which limited Plaintiff's ability to pursue his claim under Title VII. The timeliness of filing the Title VII complaint with the Office, prohibits Plaintiffs claim from being time barred and the District is not entitled to judgment as to Plaintiff's DHRA claims.

**II.**    **Plaintiff's claims are not subject to the notice provisions pursuant to the DC Code Section 12-309.**

Claims brought under Title VII are not subject to the notice provisions of D.C. Code § 12-309.  *Johnson-El v. District of Columbia*, 579 A.2d 163, 170 (D.C.1990).

*Felder v. Casey*, 487 U.S. 131, 140-14 (1988) (adopting the near unanimous conclusion of the federal courts that notice-of-claim statutes are inapplicable to federal court § 1983 litigation).

In *Felder,* the Supreme Court has held that:

> Congress entitled those deprived of their civil rights to recover full compensation from the governmental officials responsible for those deprivations. A state law that conditions that right of recovery upon compliance with a rule designed to minimize governmental liability and that directs injured persons to seek redress in the first instance from the very targets of the federal legislation, is inconsistent in both purpose and effect with the remedial objectives of the federal civil rights law. Principles of federalism, as well as the Supremacy Clause, dictate that such a state law must give way to vindication of the federal right when that right is asserted in state court.

In the present case, Plaintiff's discrimination and retaliation claims are brought under Title VII, 42 U.S.C. § 2000(e) et seq. and not as a meritorious tort claim. Nothing in the history of the Act indicates that Congress ever considered the question whether the Act specifically DC Code §12-309 should apply to federal actions. The conclusion that Congress was not motivated by the municipality's potential liability for everyday torts is strengthened by the fact that a provision was added which allowed written Metropolitan Police reports to fulfill the notice requirement of the Act. Such reports would have been commonly associated with street accidents and similar events.

In accordance with the stated law, Defendant incorrectly argues that Plaintiff failed to give notice to the Mayor of the District of Columbia pursuant to the DC Code, §12-309. The Plaintiff's claims are not tort claims and thus not barred and the Defendant is not entitled to judgment on Counts I and Counts II. Defendant's argument suggests that DC law supersedes the intent of Congress when it set forth the general requirement for the filing of a Title VII discrimination claim.

### III.     Plaintiff has produced enough evidence to sustain a *prima facia* case of retaliation.

Courts look to Title VII jurisprudence when analyzing employment discrimination claims under the DCHRA. *Goos v. National Association of Realtors*, 715 F.Supp. 2 (1988). To establish a prima facie case for retaliation under Title VII, the plaintiff must demonstrate that: 1) that [he] engaged in a statutory protected activity; 2) that the employer took an adverse personnel action; and 3) that a causal connection exited between the two; employee bears initial burden of proving each element of prima facie case. Civil *McKenna v. Weinberger*, 729 F.2d 783 (1984); *Judge v. Marsh*, 649 F.Supp 770 (D.D.C. 1986). Plaintiff recalled that within 3 weeks of his training, the verbal incident involving the female recruit occurred. (Exhibit 1, page 1) The Plaintiff simply spoke out and suggested that the comment about "baby's daddy" was inappropriate and out of context for that setting. The comment clearly set off a firestorm of events which eventually resulted in the Plaintiff's termination from MPD.

The issue before the Court is whether Thompson demonstrated that he engaged in "statutory protected activity" under the first prong of the prima facie case of retaliation. Mr. Thompson's right to address the issue was not done in a disrespectful manner. However the results of his comment brought him out of favor with Sgt. Taylor particularly. His action was clearly filing a statutorily protected activity.

The court must then determine whether the employer took an adverse personnel action. Plaintiff Thompson was unfairly harassed by his superiors. The Protective Order and its subsequent dismissal was used as pretext to terminate the Plaintiff. When MPD presented Mr. Thompson with a termination letter because of his complaints concerning Sergeant Taylor, that completed all the elements necessary to make a prima facie case of retaliation.

IV.     **Plaintiff can establish a *prima facie* case for retaliation and he will show that the Districts non-discriminatory and non-retaliatory reasons for termination were pretextual.**

*McDonnell Douglas v. Green,* 411 U.S. 792 (1973) establishes the standards for discrimination and retaliation.  A plaintiff claiming unlawful retaliation must prove her claim under the burden-shifting framework established by *Mcdonnell.*    This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainants qualifications. *Mcdonnell Douglas v. Green,* 411 U.S. 802 (1973)

        Plaintiff Thompson race, (African-American) and gender (male) were the subject and created the basis for his discrimination claim.   The District has conceded in its summary judgment motion that the Plaintiff was qualified for the position because it proffered in it's statement of material facts as to which there is no material issue, #39 that he "was not disciplined for any acts relating to his attending the police academy".

        It is enough that gender is a factor contributing to the discrimination in substantial way. That this was the intent of Congress is readily apparent from the small but highly significant facet of the legislative history of the Title VII.  *Barnes v. Costle,* 561 F.2d 983, 991.  Plaintiff has provided testimony through deposition and through affidavits that white male and in some instances female employees were treated differently from him.  (Exhibit 6, Salisburg affidavit) This testimony creates the basis for his Title VII claims.

Once this four prong test has been satisfied, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *McDonnell* at 802.

The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. The defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. *Texas Department of Community Affairs v. Joyce Ann Burdin,* 450 U.S. 248, 255.

The District fails to reach its burden in both its opposition to Plaintiff's claims for discrimination and retaliation. The District of Columbia states in its motion for summary judgment that "the events that triggered the OIA investigation against Mr. Thompson were unrelated to Plaintiff's performance in the police academy". (Page 19) The District goes further by stating that Plaintiff's termination was based on the results of an investigation by MPD's Office of Internal Affairs concerning Plaintiff's arrest in Prince George's County for making threats and telephone misuse and, for making false omissions about drug use on plaintiff's MPD application. This conclusion makes it difficult for the District to determine that Plaintiff's termination was justified and not for purely discriminatory and retaliatory reasons.

The Plaintiff was exonerated in all of the incidents that the District cited. The Prince George's claim for threats and telephone use through a peace order was dismissed by the Honorable Mark T. O'brien Prince George's County District Court Judge on March 08, 2004. (See Exhibit 8) Protective Order Hearing. The Judge found Ms. Torrance testimony

unbelievable and noted that it did not make sense that the complainant felt terrorized for six years yet only at that moment decided to file a complaint. The complainant also could not prove that the alleged phone calls she received were from a phone listed in Troy Thompson's name. It is interesting to note that the alleged "(9)" traced calls made to Ms. Jameson's home on February 22, 2004" could not be attributed to the Plaintiff because they did not match any phone numbers that he possessed. Jamison's entire claim against the Plaintiff was fabricated. The credibility of Ms. Jamison was also put into question by LaTanya Torrance. Her testimony refutes the inconsistent and utterly bizarre accounts of "Icy" Jamison who could not recall the Plaintiff's actual name and also could not recall his actual residential address when confronted at her Protective Order hearing. (See Exhibit 8, Transcript from hearing page 70-72).

The District cites *Polcover v. Secretary of the Treasury, et al.,* 477 F.2d 1223 (D.C. Cir. 1973) to suggest that the fact that a criminal procedure was nolle'd does not prohibit the District from proceeding with the administrative disciplinary proceedings. The facts in Plaintiff's case may be distinguished from *Polcover* because the results of his criminal proceedings reached disposition before his eventual termination of employment. In *Polcover,* the appellant's criminal action was "pending" from November 23, 1964, when a criminal complaint against the appellant was filed by an IRS agent, until the trial in September of 1967. *Polcover v. Secretary of the Treasury* 477 F.2d 1223, 1232. Plaintiff immediately told his superiors about the dismissal of all claims against him in March of 2004. The actual OIA investigation did not include a statement from Ms. Jameson until April 8, 2004 nearly a month after the case was dismissed.

Plaintiff explained in detail any discrepancies that existed in his Blue Book applications. What is consistent is that the Plaintiff never personally consumed or sold marijuana. He admitted that he had been exposed to the drug. He was perhaps being overly cautious if anything

in reporting those incidents.  What is certain is that he consistently denied any drug usage on his part.  (Exhibit 1, page 2-3)  Finally, the issues regarding prior drug usage were disclosed early on by the Plaintiff.  The District knew that Plaintiff had applied for a position with the Prince George's County Police when he began his employment with MPD.  The issue was not raised again until it was clear that MPD no longer needed his services and extended his probationary period.  (Exhibit 2)  This allowed the Plaintiff to continue his "at-will" employee status.  This in turn made it easier for the District to remove him from the Department because he lacked the protections that existed for officer's represented by the FOP.

In light of Plaintiff's arguments, it is clear that he can establish that the District cannot set forth legitimate non-discriminatory and non-retaliatory reasons for his termination.

CONCLUSION

Judgment against the Plaintiff should be denied as a matter of law because the complaint was not barred by DCHRA statutory requirements, Notice was given pursuant to Title VII and finally his claim is sufficient to show that the District of Columbia cannot set forth legitimate non-discriminatory reasons for his termination.

Respectfully submitted,


_____/s/_____
REUBEN B. COLLINS, II
THE COLLINS LAW GROUP, LLC
P.O. Box 1857
La Plata, Maryland 20646
(301) 934-4366

14