UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TROY THOMPSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No.: 06cv0063 (EGS) |
| | : | |
| DISTRICT OF COLUMBIA, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

_____

## PLAINTIFF'S MOTION TO ALTER JUDGMENT

Plaintiff Troy Thompson, by and through counsel and pursuant to Fed. R. Civ. P. 59(e) do hereby requests that this honorable court reconsider its August 28, 2008 granting the Defendant's motion for summary judgment on all claims in this matter.  In support of this motion Plaintiff states as follows:

Plaintiff's claim satisfies all statutorily required statute of limitations and establishes material facts as to which there exists genuine issues in dispute.  A memorandum of Points and Authorities in support of this motion is attached hereto.  Supporting exhibits and a proposed order are also attached.

Respectfully submitted,

_____/s/_____
THE COLLINS LAW GROUP, LLC
Reuben B. Collins, II (#459751)
P.O. Box 1857
La Plata, Maryland 20646
(301) 934-4366

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TROY THOMPSON                          :
                                       :
            Plaintiff,                 :
                                       :
v.                                     :        Case No.: 06cv0063 (EGS)
                                       :
DISTRICT OF COLUMBIA,                  :
                                       :
            Defendant.                 :
                                       :
_____

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S MOTION TO ALTER JUDGMENT**

Plaintiff Troy Thompson, by and through counsel and pursuant to Federal Rule of Civil Procedure 59(e) respectfully moves that the Honorable Court reconsider the granting of Defendant's motion for summary judgment.

**STATEMENT OF THE CASE**

This is an employment discrimination and retaliation claim arising out of Plaintiff's termination as a recruit officer with the Metropolitan Police Department (MPD). Plaintiff alleges that he was terminated because of his gender (male) and race (African American). Plaintiff's complaint alleged that MPD treated him differently than women and non-African-American recruit officers. Plaintiff's opposition motion included testimony in the form of an affidavit (Steven Salisburg) stating that the District treated Plaintiff Thompson different than other similarly situated recruits. Plaintiff also alleged that he was terminated in retaliation for engaging in protected activity when he openly challenged his training official for using inappropriate language towards a female recruit in his class. The record of this case included

numerous examples of questionable responses by the District as a result of the Plaintiff's decision to challenge his training official.   This action was brought against the District of Columbia pursuant to Title VII, 42 U.S.C. § 2000(e) *et seq.* and the DC Human Rights Act (DCHRA),  C.C. Code §2-1401.01 *et seq.*   This Honorable Court granted Defendant District of Columbia's Motion for Summary Judgment on all counts in a August 28, 2008 decision.

<strong>STANDARD OF REVIEW</strong>

Under the case law of this circuit, "regardless of the way a caption characterizes a motion, a post-judgment filing challenging the correctness of the judgment falls within Rule 59(e)'s perimeter". *Nichols v. Board of Trustees of the Asbestos Workers Local 24 Pension Plan, et al.*  835 F.2d 881, 887 (D.C. Circuit 1987).   The rule has generally been invoked only to support reconsideration of matters properly encompassed in a decision on the merits.  42 U.S.C. §1988.

Rule 59(e) was added to the Federal Rules of Civil Procedure in 1946.  Its draftsmen had a clear and narrow aim.  The rule was adopted to "mak[e] clear that the District Court possesses the power" to rectify its own mistakes in the period immediately following the entry of judgment.  *White v. New Hampshire Department of Employment Security, et al.,* 455 U.S. 445, 451, 102 S.Ct. 1162, 1166.

<strong>ARGUMENT</strong>

**I.     Plaintiff's claims were not barred by the one year statute of limitation.**

Statutory claims are not subject to the one year statue of limitations under the DC Code § 2-1403.16 (a).

D.C. Code 2-1403.16 (a) provides:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction for damages and such other remedies as may be appropriate… A private cause of action pursuant to this chapter shall be filed in a court of competent jurisdiction…The timely filing of a complaint with the Office, or under the administrative procedures established by the Mayor pursuant to § 2-1403.03, shall toll the running of the statute of limitations while the complaint is pending.

In the present case, Plaintiff filed an EEOC complaint which tolled the statute of limitations. Plaintiff was entitled to bring a Title VII action in federal court and was not required to first file his complaint with the District of Columbia agency.  Plaintiff was terminated on June 30, 2004 and filed his complaint with Human Rights Commission on July 23, 2004.  His claim was administratively investigated for a time period that exceeded the generally required 180 days. There was at least one re-scheduling of mediation proceedings during the course of the Human Rights Commission's investigation.  (Exhibit 1) Plaintiff requested an immediate hearing or in the alternative a right to sue letter on August 10, 2005.  (Exhibit 2) Subsequently, the Plaintiff received his right to sue letter on October 19, 2005.  There a statutory barrier did not exist which limited Plaintiff's ability to pursue his claim under Title VII.  The timeliness of filing the Title VII complaint with the Office, prohibits Plaintiffs claim from being time barred and the District is not entitled to judgment as to Plaintiff's DHRA claims.   Plaintiff could not have filed his lawsuit within the year requirement without abandoning Title VII's requirement of exhausting all administrative remedies.

II.     **Plaintiff's claims were not subject to the notice provisions pursuant to the DC Code Section 12-309.**

Claims brought under Title VII are not subject to the notice provisions of D.C. Code § 12-309. *Johnson-El v. District of Columbia*, 579 A.2d 163, 170 (D.C.1990).

*Felder v. Casey*, 487 U.S. 131, 140-14 (1988) (adopting the near unanimous conclusion of the federal courts that notice-of-claim statutes are inapplicable to federal court § 1983 litigation).

      In *Felder,* the Supreme Court has held that:

> Congress entitled those deprived of their civil rights to recover full compensation from the governmental officials responsible for those deprivations. A state law that conditions that right of recovery upon compliance with a rule designed to minimize governmental liability and that directs injured persons to seek redress in the first instance from the very targets of the federal legislation, is inconsistent in both purpose and effect with the remedial objectives of the federal civil rights law. Principles of federalism, as well as the Supremacy Clause, dictate that such a state law must give way to vindication of the federal right when that right is asserted in state court.

      In the present case, Plaintiff's discrimination and retaliation claims are brought under Title VII, 42 U.S.C. § 2000(e) et seq. and not as a meritorious tort claim. Nothing in the history of the Act indicates that Congress ever considered the question whether the Act specifically DC Code §12-309 should apply to federal actions. The conclusion that Congress was not motivated by the municipality's potential liability for everyday torts is strengthened by the fact that a provision was added which allowed written Metropolitan Police reports to fulfill the notice requirement of the Act. Such reports would have been commonly associated with street accidents and similar events.

      In accordance with the stated law, Defendant incorrectly argues that Plaintiff failed to give notice to the Mayor of the District of Columbia pursuant to the DC Code, §12-309. The Plaintiff's claims are not tort claims and thus not barred and the Defendant is not entitled to judgment on Counts I and Counts II. Defendant's argument suggests that DC law supersedes the intent of Congress when it set forth the general requirement for the filing of a Title VII

discrimination claim. Additionally, a claimant under Title VII must exhaust all administrative claims before filing a lawsuit.

**III.      Plaintiff produced enough evidence to sustain a *prima facia* case of retaliation.**

Courts look to Title VII jurisprudence when analyzing employment discrimination claims under the DCHRA. *Goos v. National Association of Realtors*, 715 F.Supp. 2 (1988). To establish a prima facie case for retaliation under Title VII, the plaintiff must demonstrate that: 1) that [he] engaged in a statutory protected activity; 2) that the employer took an adverse personnel action; and 3) that a causal connection exited between the two; employee bears initial burden of proving each element of prima facie case. Civil *McKenna v. Weinberger*, 729 F.2d 783 (1984); *Judge v. Marsh*, 649 F.Supp 770 (D.D.C. 1986). Plaintiff recalled that within 3 weeks of his training, the verbal incident involving the female recruit occurred. (Exhibit 1, page 1 of Plaintiff's Opposition motion) The Plaintiff simply spoke out and suggested that the comment about "baby's daddy" was inappropriate and out of context for that setting. The comment clearly set off a firestorm of events which eventually resulted in the Plaintiff's termination from MPD.

The issue before the Court is whether Thompson demonstrated that he engaged in "statutory protected activity" under the first prong of the prima facie case of retaliation. Mr. Thompson's right to address the issue was not done in a disrespectful manner. However the results of his comment brought him out of favor with Sgt. Taylor particularly. His action was clearly filing a statutorily protected activity.

The court must then determine whether the employer took an adverse personnel action. Plaintiff Thompson was unfairly harassed by his superiors. The Protective Order and its subsequent dismissal was used as pretext to terminate the Plaintiff. When MPD presented Mr.

Thompson with a termination letter because of his complaints concerning Sergeant Taylor, that completed all the elements necessary to make a prima facie case of retaliation.

IV.    **Plaintiff established a *prima facie* case for retaliation and showed that the Districts non-discriminatory and non-retaliatory reasons for termination were pretextual and as such ran afoul of Title VII (Counts 1 and 2 of the complaint).**

*McDonnell Douglas v. Green,* 411 U.S. 792 (1973) establishes the standards for discrimination and retaliation.  A plaintiff claiming unlawful retaliation must prove her claim under the burden-shifting framework established by *Mcdonnell.*   This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainants qualifications. *Mcdonnell Douglas v. Green,* 411 U.S. 802 (1973)

Plaintiff Thompson race, (African-American) and gender (male) were the subject and created the basis for his discrimination claim.  The District has conceded in its summary judgment motion that the Plaintiff was qualified for the position because it proffered in it's statement of material facts as to which there is no material issue, #39 that he "was not disciplined for any acts relating to his attending the police academy".

It is enough that gender is a factor contributing to the discrimination in substantial way. That this was the intent of Congress is readily apparent from the small but highly significant facet of the legislative history of the Title VII.  *Barnes v. Costle,* 561 F.2d 983, 991.  Plaintiff has provided testimony through deposition and through affidavits that white male and in some instances female employees were treated differently from him.  (Exhibit 6, Salisburg affidavit of Plaintiff's opposition motion) This testimony creates the basis for his Title VII claims.

Once this four prong test has been satisfied, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *McDonnell* at 802.

The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons. The defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection. The explanation provided must be legally sufficient to justify a judgment for the defendant. *Texas Department of Community Affairs v. Joyce Ann Burdin,* 450 U.S. 248, 255.

The District fails to reach its burden in both its opposition to Plaintiff's claims for discrimination and retaliation. The District of Columbia states in its motion for summary judgment that "the events that triggered the OIA investigation against Mr. Thompson were unrelated to Plaintiff's performance in the police academy". (Page 19) The District goes further by stating that Plaintiff's termination was based on the results of an investigation by MPD's Office of Internal Affairs concerning Plaintiff's arrest in Prince George's County for making threats and telephone misuse and, for making false omissions about drug use on plaintiff's MPD application. This conclusion makes it difficult for the District to determine that Plaintiff's termination was justified and not for purely discriminatory and retaliatory reasons.

The Plaintiff was exonerated in all of the incidents that the District cited. The Prince George's claim for threats and telephone use through a peace order was dismissed by the Honorable Mark T. O'brien Prince George's County District Court Judge on March 08, 2004. (See Exhibit 8 of Plaintiff's Opposition motion) Protective Order Hearing. The Judge found Ms.

Torrance testimony unbelievable and noted that it did not make sense that the complainant felt terrorized for six years yet only at that moment decided to file a complaint.  The complainant also could not prove that the alleged phone calls she received were from a phone listed in Troy Thompson's name. It is interesting to note that the alleged "(9)" traced calls made to Ms. Jameson's home on February 22, 2004" could not be attributed to the Plaintiff because they did not match any phone numbers that he possessed.  Jamison's entire claim against the Plaintiff was fabricated.  The credibility of Ms. Jamison was also put into question by LaTanya Torrance.  Her testimony refutes the inconsistent and utterly bizarre accounts of "Icy" Jamison who could not recall the Plaintiff's actual name and also could not recall his actual residential address when confronted at her Protective Order hearing.   (See Exhibit 8, Transcript from hearing page 70-72 from Plaintiff's Opposition motion).

The District cites *Polcover v. Secretary of the Treasury, et al.,* 477 F.2d 1223 (D.C. Cir. 1973) to suggest that the fact that a criminal procedure was nolle'd does not prohibit the District from proceeding with the administrative disciplinary proceedings.  The facts in Plaintiff's case may be distinguished from *Polcover* because the results of his criminal proceedings reached disposition before his eventual termination of employment.  In *Polcover,* the appellant's criminal action was "pending" from November 23, 1964, when a criminal complaint against the appellant was filed by an IRS agent, until the trial in September of 1967.  *Polcover v. Secretary of the Treasury*  477 F.2d 1223, 1232.  Plaintiff immediately told his superiors about the dismissal of all claims against him in March of 2004.  The actual OIA investigation did not include a statement from Ms. Jameson until April 8, 2004 nearly a month after the case was dismissed.

Plaintiff explained in detail any discrepancies that existed in his Blue Book applications. What is consistent is that the Plaintiff never personally consumed or sold marijuana.  He

admitted that he had been exposed to the drug.  He was perhaps being overly cautious if anything in reporting those incidents.  What is certain is that he consistently denied any drug usage on his part.  (Exhibit 1, page 2-3 of Summary Judgment Opposition)  Finally, the issues regarding prior drug usage were disclosed early on by the Plaintiff.  The District knew that Plaintiff had applied for a position with the Prince George's County Police when he began his employment with MPD.  The issue was not raised again until it was clear that MPD no longer needed his services and extended his probationary period.  (Exhibit 2 of Summary Judgment Opposition)  This allowed the Plaintiff to continue his "at-will" employee status.  This in turn made it easier for the District to remove him from the Department because he lacked the protections that existed for officer's represented by the FOP.

In light of Plaintiff's arguments, it is clear that he established that the District could not set forth legitimate non-discriminatory and non-retaliatory reasons for his termination.


CONCLUSION

Judgment against the Plaintiff should be reconsidered as a matter of law because the complaint was not barred by DCHRA statutory requirements, Notice was given pursuant to Title VII and finally his claim is sufficient to show that the District of Columbia cannot set forth legitimate non-discriminatory reasons for his termination.

Respectfully submitted,


_____/s/_____
REUBEN B. COLLINS, II
THE COLLINS LAW GROUP, LLC
P.O. Box 1857
La Plata, Maryland 20646
(301) 934-4366